**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **WYATT MILLER, individually and on behalf of all others similarly situated,** ) | |
| ) | **Case No.** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CLASS ACTION COMPLAINT** |
| ) | |
| **FIFTH THIRD BANK, VANTIV, INC., NATIONAL PROCESSING COMPANY and IRONWOOD FINANCIAL, LLC,** ) | **DEMAND FOR JURY TRIAL** |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff WYATT MILLER, individually and on behalf of a class of similarly situated individuals and entities, complains against Defendants Fifth Third Bank ("Fifth Third"), Vantiv, Inc. ("Vantiv"), National Processing Company ("NPC"), and Ironwood Financial, LLC ("Ironwood") as follows:

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a class of California small business owners who were secretly recorded during telemarketing calls made by Ironwood on behalf of Fifth Third, Vantiv and NPC.

2.     Fifth Third is a nationally known bank. Fifth Third maintains a nationwide credit and debit card payment processing division. Fifth Third employs Vantiv and NPC to perform technology services that are essential to its payment processing business. Fifth Third employs Ironwood, a sales and marketing firm, to sell these payment processing services to small businesses around the country.

3.     Ironwood made thousands of telemarketing calls to California small business owners every day on behalf of Fifth Third. During these calls, Ironwood telemarketers solicited confidential and valuable business data from their sales targets.

4.     Without warning, Ironwood surreptitiously recorded each and every one of these phone calls and stored those recordings on a cloud-based system accessible from the internet.

5.     In addition to selling the payment processing services performed by Fifth Third, Vantiv and NPC, Ironwood is employed by Vantiv and NPC to sell credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.). Every one of Ironwood's telemarketing calls has the dual purpose of selling processing services (on behalf of Fifth Third, Vantiv and NPC) and hardware (for Vantiv and NPC).

6.     Ironwood's practice of secretly recording confidential telephone calls violates the California Invasion of Privacy Act, Cal. Penal Code §§ 632.

7.     Plaintiff brings this action on behalf of himself and all others similarly situated seeking remedy for these illegal practices.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of a different state than Defendants. The number of members of the proposed class is in the aggregate greater than 100 and more than two-thirds of the class members reside in a state other than the state in which a Defendant is a citizen.

9.     This Court has personal jurisdiction over Ironwood because Ironwood conducts business in Illinois and a substantial portion of the offending telephone calls were placed from

Ironwood's call center located at 40 Schuman Boulevard in Naperville, Illinois.

10.     The Court further has personal jurisdiction over Fifth Third, Vantiv and NPC because each of them markets and performs credit card merchant processing and/or provides hardware in Illinois and each have purposely availed themselves of the laws of this forum.

11.     Venue is proper in the Northern District of Illinois (Eastern Division) because Fifth Third, Vantiv, NPC and Ironwood conduct business in this District and a substantial part of the telephone calls at issue were made and recorded from Ironwood's telemarketing call center in Naperville, Illinois, which is within this District.

## PARTIES

12.     Plaintiff Wyatt Miller is an individual residing in Monterey, California.

13.     Defendant Fifth Third is an Ohio banking corporation with its headquarters in Cincinnati, Ohio.

14.     Defendant Vantiv is a Delaware corporation with its headquarters in Cincinnati, Ohio.

15.     Defendant NPC is a Nebraska corporation with its headquarters in Cincinnati, Ohio.

16.     Defendant Ironwood is a Mississippi corporation with its headquarters in Salt Lake City, Utah and a telemarketing call center in Naperville, Illinois from which a substantial number of the calls at issue in this case were made and recorded.

## FACTUAL ALLEGATIONS

17.     Every business in the United States that wishes to accept payment through VISA or MasterCard must have a relationship with a bank that is a member of the VISA and MasterCard systems. The "member bank" that each business (or "merchant") contracts with is called an acquiring bank or "acquirer." In this case, the acquirer at issue is Fifth Third.

3

18.     Acquirers like Fifth Third handle and process every credit and debit card transaction that occurs at its acquired merchants' places of business. The acquirer then charges the merchant a percentage fee on each transaction in return for these "merchant processing" services.

19.     The more merchants an acquiring bank acquires, the more money it obtains in processing fees. According to a report authored by the Federal Reserve System, the total value of noncash payments in the United States in 2012 was $79 trillion.[1] Acquiring merchants is big business.

20.     Due to the sheer size of the debit and credit card processing market in the United States, acquiring banks like Fifth Third often lack the sales staff necessary to solicit the countless number of small merchants across the United States. As a result, acquirers turn to "Third Party Agents" or "TPAs" like Ironwood.

21.     TPAs like Ironwood act as the sales arm (or as one of many sales arms) of an acquiring bank. Accordingly, Ironwood makes many thousands of telephone calls and hundreds of in-person sales calls on behalf of Fifth Third every day. Each call is an effort to recruit the merchant away from another acquiring bank to Fifth Third. When Ironwood acquires a merchant for Fifth Third, the bank pays Ironwood a portion of the fee that Fifth Third collects on each of that merchant's transactions. Ironwood is paid these fees directly from Fifth Third on an ongoing basis.

22.     In addition to sales-oriented TPAs like Ironwood, acquirers often use technology-oriented TPAs to manage the enormous data traffic involved in processing the billions of credit and debit card transactions occurring nationwide. Vantiv and NPC specialize in providing these technology-oriented services.

---

[1] Federal Reserve System. *2013 Federal Reserve Payment Study: Recent and Long-Term Payment Trends in the United States: 2003-2012*. December 2013, https://www.frbservices.org/files/communications/pdf/research/2013_payments_study_summary.pdf.

23.     Fifth Third employs Vantiv (a former Fifth Third subsidiary) and NPC (a Vantiv subsidiary) to process the data flow of its merchants' transactions. Like Ironwood, both Vantiv and NPC are paid a percentage of the fee charged to the merchant on each transaction. Vantiv and NPC also offer credit and debit card processing hardware (point-of-sale terminals, PIN pads, etc.) to merchants. This hardware is also sold by Ironwood and each of Vantiv, NPC and Ironwood share the profit from those sales.

24.     Ironwood's practice was to make telemarketing sales calls to merchants with the goal of setting an in-person meeting between the merchant and an Ironwood field sales representative. That field representative would then visit the merchant's place of business and sell the merchant processing services and hardware offered by Fifth Third, Vantiv and NPC.

25.     When an Ironwood field representative closes a sale with a merchant, the sales agent coordinates the execution of a contract between the merchant, Fifth Third, Vantiv, NPC and Ironwood (the "merchant contract").

26.     The merchant contract is principally drafted by Fifth Third, Vantiv and NPC, and, once executed, must be approved by each of them before the transaction is considered complete. Each of Fifth Third, Vantiv and NPC have the power to decline any merchant contract (if, for example, they find the merchant not creditworthy) and, in effect, cancel Ironwood's sale.

27.     Together, acquirers, technology TPAs and sales TPAs combine to provide payment processing services to merchants across the country. Acquiring banks like Fifth Third initiate and complete financial transactions among member banks. Technology-oriented companies like Vantiv and NPC manage the data transfers upon which those transactions are based. Finally, organizations like Ironwood bring these services to the market and make sales.

28.     Given the size and scope of the credit card processing industry, it is unsurprising that the VISA and MasterCard systems have introduced rules and standards governing an acquirer's employment of TPAs. These requirements are described in the VISA Product and Service Rules, VISA Global Acquirer Risk Standards, VISA Third Party Agent Due Diligence Risk Standards and MasterCard Rules, respectively.

29.     Under the VISA Product and Service Rules and VISA Global Acquirer Risk Standards, Fifth Third was required to:

- Register Ironwood as its agent with the VISA system;

- Implement an underwriting, monitoring and control policy for Ironwood to be approved by the Fifth Third board of directors;

- Implement policies and procedures for reviewing Ironwood solicitation materials to be approved by the Fifth Third board of directors;

- Provide policies and procedures to Ironwood regarding proper merchant solicitation practices and industry-related laws and regulations;

- Perform a bona fide review of Ironwood's business practices without resorting to contractual language that limits Fifth Third's liability for Ironwood's actions;

- Provide training and education to Ironwood;

- Conduct an on-site inspection of Ironwood's place of business;

- Physically inspect Ironwood's solicitation or sales materials during the on-site inspection;

- Review and monitor Ironwood on a monthly basis;

- Conduct an in-depth annual review of Ironwood; and

- "Accept responsibility for any and all losses caused by [Ironwood]."

30.     At some time in 2015, Fifth Third conducted its due diligence review of Ironwood and formally registered Ironwood as its Third Party Agent in the VISA and MasterCard systems. It further entered into a written agreement with Ironwood that included the terms set out above, as

required by the VISA and MasterCard system rules. Ironwood began to make telemarketing and in-person sales calls nationwide on behalf of Fifth Third, Vantiv and NPC.

31.     Pursuant to the rules of the VISA and MasterCard systems set out above, Fifth Third carried out comprehensive supervisory efforts over Ironwood at all times relevant to this Complaint.

32.     The recipients of Ironwood's telemarketing calls had an objectively reasonable expectation the calls were private because the Ironwood representative introduced only his or herself, the topic of the call was business-related, and a business owner's method of processing credit and debit card transactions is by its nature sensitive and confidential.

33.     During the telemarketing calls, Ironwood telemarketers asked small business owners to disclose their business's monthly or annual debit and credit card sales volume. A company's debit and credit card sales volume is sensitive and confidential and of significant value to an owner's competitors, vendors and commercial real estate lessors. There is an obvious and reasonable expectation in disclosing such sensitive information that the call was private.

34.     Further, Ironwood telemarketers deliberately posed as a person that the business owner had a pre-existing credit card processing relationship with (*i.e.*, their existing credit and debit card processors) by adopting an overtly familiar and casual manner. As a result, there was an objectively reasonable expectation that the calls were private. The purpose of adopting a familiar and causal manner was to lure sales targets into disclosing sensitive and confidential information that helped Ironwood weigh the value of a sales prospect (*i.e.*, credit and debit card sales volume).

35.     Ironwood telemarketers solicited merchants' credit and debit card sales volume because larger volume dealers were more valuable to Fifth Third – and therefore to Vantiv, NPC

and Ironwood. Further, when a merchant had a high sales volume, the companies were able to promise a higher "bottom line" savings total to the merchant if it gave Defendants its processing business.

36.     Despite the fact that there was an objectively reasonable expectation of privacy during the calls it placed, at all times relevant to this Complaint, Ironwood engaged in the practice of making an undisclosed audio recording of each telemarketing phone call it made on behalf of Fifth Third, Vantiv and NPC.

37.     Ironwood never made any disclosure of any kind to any recipients of its calls that the calls were being recorded.

38.     Ironwood failed to disclose that the telemarketing calls were recorded precisely because its comparative testing showed sales targets were less likely to disclose their credit and debit card volume when they were informed the call was being recorded.

39.     Ironwood stored the audio recordings in cloud-based sales and data storage systems provided by Veracity Networks, LLC and Integrated Reporting is Simple, LLC. Recipients of the recorded calls were not informed that the recordings were transferred to the custody of other entities.

40.     Whenever an Ironwood telemarketer successfully scheduled an in-person sales call with a merchant, he or she submitted a paper slip to the Ironwood "Confirmation Department." Staff in the Confirmation Department then listened to the audio recording of the phone call to ensure the merchant had truly agreed to the meeting. The recordings were also made available as a sales tool to Ironwood representatives who visited merchants in the field.

41.     As a matter of practice, when a business owner divulged his or her debit and credit card sales volume, Ironwood employees memorialized that he or she had done so by recording the

8

volume with the contact information of the owner or entity on a spreadsheet called the "master list."

42.     Plaintiff and class members were injured by Ironwood's practice of creating audio records because the practice of storing audio recordings of the telephone calls in cloud-based computer systems accessible by the internet created a risk of data breach.

43.     Plaintiff and class members were further injured because Ironwood's practice of transferring the recordings of the calls to members of the Confirmation Department, to field sales representatives and third party data storage vendors ensured that the content of the calls came into the possession of persons unknown to Plaintiff and the class.

44.     The recordation of confidential communications was made in violation of the California Penal Code § 632, which was in full force and effect at all times relevant to the conduct described herein.

## CLASS ALLEGATIONS

45.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of himself and a class of individuals defined as follows:

> All individuals or entities whose telephone communications were recorded by Ironwood Financial, LLC.

46.     Specifically excluded from the class are Defendants, Defendants' officers, directors and employees, and members of their immediate families, and any Judge who may preside over this case and his or her immediate family.

47.     The members of the class are so numerous that joinder of all members is impracticable. The exact number of class members is unknown at this time but can be determined through Defendants' records. There are thousands, if not tens of thousands, of class members.

9

48.     Plaintiff's claims are typical of the claims of the members of the class as all such members were similarly affected by Defendants' wrongful conduct as alleged herein.

49.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained competent and experienced class counsel.

50.     Common questions of law and fact predominate over any individual issues for the class. The common questions of law and fact include:

     a.  Whether Ironwood recorded confidential telephonic communications with class members;

     b.  Whether the nature of Ironwood's calls created an objectively reasonable expectation that the calls were private;

     c.  Whether Ironwood disclosed to class members its recordation of confidential telephonic communications;

     d.  Whether Ironwood's conduct constitutes a violation of Cal. Penal Code § 632;

     e.  Whether Ironwood acted as an agent of or joint-venturer with Fifth Third when it recorded confidential telephonic communications with class members;

     f.  Whether Ironwood acted as an agent of or joint-venturer with Vantiv when it recorded confidential telephonic communications with class members;

     g.  Whether Ironwood acted as an agent of or joint-venturer with NPC when it recorded confidential telephonic communications with its class members.

51.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for class members to individually seek redress for Defendants' wrongful conduct. Litigating individual class members' claims would also produce a multiplicity of cases, congesting the judicial system, and creates a potential for inconsistent or contradictory judgments. Class treatment, by contrast, provides

manageable judicial treatment calculated to bring a rapid conclusion to the litigation of all claims arising from Defendant's misconduct. Class certification, therefore, is appropriate under Rule 23(b)(3).

52.     Class certification is also appropriate under Rule 23(b)(1) because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to this adjudication and/or substantially impair their ability to protect these interests.

53.     Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted, or refused to act, on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## COUNT I – IRONWOOD FINANCIAL, LLC
### Injunctive Relief

54.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

55.     Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

56.     Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

57.     Cal. Penal Code § 637.2 was in full force and effect at all times relevant to this complaint and entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

58.     Plaintiff and class members are entitled to relief and part of said relief demands that Ironwood be perpetually restrained from continued violations of Cal. Penal Code § 632.

WHEREFORE, Plaintiff prays that this Court grant permanent injunctive relief enjoining Ironwood Financial, LLC from recording confidential telephonic communications without the consent of all parties to those communications in violation of Cal. Penal Code § 632, and to award him and the class reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

## COUNT II – IRONWOOD FINANCIAL, LLC
### Violation of Cal. Penal Code § 632

59.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

60.    Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

61.    Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

62.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

WHEREFORE, Plaintiff prays that the Court enter judgment for him and the class and against Defendant Ironwood Financial, LLC and further award him and each class member damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

## COUNT III – FIFTH THIRD BANK
### Injunctive Relief

63.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

64.    Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

65.     Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

66.     Ironwood held itself out to merchants across the country as a sales agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

67.     Ironwood conducted its telemarketing operations in accordance with policies, procedures, and performance standards created by Fifth Third.

68.     Ironwood conducted its telemarketing operations in accordance with the training and education materials provided to it by Fifth Third.

69.     Fifth Third inspected and reviewed Ironwood's sales and marketing materials and practices on a monthly basis.

70.     Ironwood sought and received Fifth Third's approval of its sales and marketing materials and practices.

71.     If Fifth Third became dissatisfied with Ironwood, Fifth Third had the power to terminate its relationship with Ironwood and remove Ironwood from the registry of VISA and MasterCard TPAs, thereby preventing Ironwood from selling credit and debit card payment services.

72.     Fifth Third initially co-drafted the merchant contract and reviews and approves each executed merchant contract with the power to cancel any merchant contract it deems deficient.

73.     Ironwood recorded sales calls in an effort to advance Fifth Third's interests by acquiring new merchants for Fifth Third.

74.     Ironwood and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit.

13

75.     Ironwood and Fifth Third shared in the fees collected from merchants on every one of the merchant's credit card transactions.

76.     Accordingly, Ironwood acted as an agent of or joint-venturer with Fifth Third when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

77.     Cal. Penal Code § 637.2 was in full force and effect at all times relevant to this complaint and entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

78.     Plaintiff and class members are entitled to relief and part of said relief demands that Fifth Third be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff and class members pray that this Court grant permanent injunctive relief enjoining Fifth Third Bank from recording confidential telephonic communications through the acts of its agent or joint-venturer Ironwood Financial, LLC without the consent of all parties to those communications in violation of Cal. Penal Code § 632, and to award him and the class reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

### COUNT IV – FIFTH THIRD BANK
### Violation of Cal. Penal Code § 632

79.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

80.     Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

81.     Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

82.     Ironwood held itself out to merchants across the country as a sales agent acting on behalf of Fifth Third and did so with Fifth Third's full knowledge and approval.

83.     Ironwood conducted its telemarketing operations in accordance with policies, procedures, and performance standards created by Fifth Third.

84.     Ironwood conducted its telemarketing operations in accordance with the training and education materials provided to it by Fifth Third.

85.     Fifth Third inspected and reviewed Ironwood's sales and marketing materials and practices on a monthly basis.

86.     Ironwood sought and received Fifth Third's approval of its sales and marketing materials and practices.

87.     If Fifth Third became dissatisfied with Ironwood, Fifth Third had the power to terminate its relationship with Ironwood and remove Ironwood from the registry of VISA and MasterCard TPAs, thereby preventing Ironwood from selling credit and debit card payment services at all.

88.     Fifth Third initially co-drafted the merchant contract and reviews and approves each executed merchant contract with the power to cancel any merchant contract it deems deficient.

89.     Ironwood recorded sales calls in an effort to advance Fifth Third's interests by acquiring new merchants for Fifth Third.

90.     Ironwood and Fifth Third contributed their respective business expertise to the common project of processing credit card transactions for profit.

91.     Ironwood and Fifth Third shared in the fees collected from merchants on every one of the merchant's credit card transactions.

92.     Accordingly, Ironwood acted as an agent of or joint-venturer with Fifth Third when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

93.     Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

WHEREFORE, Plaintiff prays that the Court enter judgment for him and the class and against Defendant Fifth Third Bank and further award him and each class member damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

### COUNT V – VANTIV, INC.
### <u>Injunctive Relief</u>

94.     Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

95.     Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

96.     Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

97.     Ironwood held itself out to merchants across the country as a sales agent acting on behalf of Vantiv and did so with Vantiv's full knowledge and approval.

98.     Vantiv initially co-drafted the merchant contract and reviews and approves each executed merchant contract with the power to cancel any contract it deems deficient.

99.     Ironwood recorded sales calls in an effort to advance Vantiv's interests by increasing the number of merchant's who paid a fee to Vantiv on each debit and credit transaction. Ironwood further recorded the calls in order to sell more debit and credit card processing hardware

on behalf of Vantiv.

100.    Ironwood and Vantiv contributed their respective business expertise to the common project of processing credit card transactions for profit.

101.    Ironwood and Vantiv shared in the fees collected from merchants on every one of the merchant's credit card transactions and in the fees for providing credit and debit card processing hardware.

102.    Accordingly, Ironwood acted as an agent of or joint-venturer with Vantiv when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

103.    Cal. Penal Code § 637.2 was in full force and effect at all times relevant to this complaint and entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

104.    Plaintiff and class members are entitled to relief and part of said relief demands that Vantiv be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff prays that this Court grant permanent injunctive relief enjoining Vantiv, Inc. from recording confidential telephonic communications through the acts of its agent or joint-venturer Ironwood Financial, LLC without the consent of all parties to those communications in violation of Cal. Penal Code § 632, and to award him and the class reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

### COUNT VI – VANTIV, INC.
### <u>Violation of Cal. Penal Code § 632</u>

105.    Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

106.    Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

107.    Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

108.    Ironwood held itself out to merchants across the country as a sales agent of Vantiv and did so with Vantiv's full knowledge and authority.

109.    Vantiv initially co-drafted the template merchant contract and reviews and approves each executed merchant contract with the power to cancel any contract it deems deficient.

110.    Ironwood recorded sales calls in an effort to advance Vantiv's interests by increasing the number of merchant's who paid a fee to Vantiv on each debit and credit transaction. Ironwood further recorded the calls in order to sell more debit and credit card processing hardware on behalf of Vantiv.

111.    Ironwood and Vantiv contributed their respective business expertise to the common project of processing credit card transactions for profit.

112.    Ironwood and Vantiv shared in the fees collected from merchants on every one of the merchant's credit card transactions and in the fees for providing credit and debit card processing hardware.

113.    Accordingly, Ironwood acted as an agent of or joint-venturer with Vantiv when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

114.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

WHEREFORE, Plaintiff prays that the Court enter judgment for him and the class and against Defendant Vantiv, Inc. and further award him and each class member damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

## COUNT VII – NATIONAL PROCESSING COMPANY
### Injunctive Relief

115.   Plaintiff incorporates all paragraphs into this Count as if fully alleged herein.

116.   Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

117.   Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632 as described herein.

118.   Ironwood held itself out to merchants across the country as a sales agent acting on behalf of NPC and did so with NPC's full knowledge and approval.

119.   NPC initially co-drafted the template merchant contract and reviews and approves each executed merchant contract with the power to cancel any contract it deems deficient.

120.   Ironwood recorded sales calls in an effort to advance NPC's interests by increasing the number of merchant's who paid a fee to NPC on each debit and credit transaction. Ironwood further recorded the calls in order to sell more debit and credit card processing hardware on behalf of NPC.

121.   Ironwood and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit.

122.   Ironwood and NPC shared in the fees collected from merchants on every one of the merchant's credit card transactions and in the fees for providing credit and debit card processing hardware.

123. Accordingly, Ironwood acted as an agent of or joint-venturer with NPC when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

124. Cal. Penal Code § 637.2 was in full force and effect at all times relevant to this complaint and entitles Plaintiff to bring an action to enjoin and restrain any violation of Cal. Penal Code § 630 *et seq.*

125. Plaintiff and class members are entitled to relief and part of said relief demands that NPC be perpetually restrained from continued violations of Cal. Penal Code § 632 through the acts of its agents or joint-venturers.

WHEREFORE, Plaintiff prays that this Court grant permanent injunctive relief enjoining National Processing Company from recording confidential telephonic communications through the acts of its agent or joint-venturer Ironwood Financial, LLC without the consent of all parties to those communications in violation of Cal. Penal Code § 632, and to award him and the class reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

### COUNT VIII – NATIONAL PROCESSING COMPANY
#### Violation of Cal. Penal Code § 632

126. Plaintiff incorporates all previous paragraphs into this Count as if fully alleged herein.

127. Ironwood's conduct described herein constitutes a violation of Cal. Penal Code § 632.

128. Plaintiff and class members have been injured as a proximate result of Ironwood's violation of Cal. Penal Code § 632.

129.    Ironwood held itself out to merchants across the country as a sales agent of NPC and did so with NPC's full knowledge and authority.

130.    NPC initially co-drafted the merchant contract and reviews and approves each executed merchant contract with the power to cancel any contract it deems deficient.

131.    Ironwood recorded sales calls in an effort to advance NPC's interests by increasing the number of merchant's who paid a fee to NPC on each debit and credit transaction. Ironwood further recorded the calls in order to sell more debit and credit card processing hardware on behalf of NPC.

132.    Ironwood and NPC contributed their respective business expertise to the common project of processing credit card transactions for profit.

133.    Ironwood and NPC shared in the fees collected from merchants on every one of the merchant's credit card transactions and in the fees for providing credit and debit card processing hardware.

134.    Accordingly, Ironwood acted as an agent of or joint-venturer with NPC when it surreptitiously recorded outbound telemarketing telephone calls to Plaintiff and class members and was operating in the scope of that agency relationship or joint venture each time it did so.

135.    Cal. Penal Code § 637.2 grants Plaintiff and class members the power to bring a private action to remedy a violation of Cal. Penal Code § 632 and fixes the amount of damages recoverable at $5,000 per such violation.

WHEREFORE, Plaintiff prays that the Court enter judgment for him and the class and against Defendant National Processing Company and further award him and each class member damages in the amount of $5,000 per violation of Cal. Penal Code § 632, reasonable attorneys' fees, expenses and costs, and such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues that may be tried and decided by jury.

Dated: August 31, 2016

Respectfully submitted,


By: _____/s/ Jacie C. Zolna_____
One of Plaintiff's Attorneys


Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin R. Swetland
bswetland@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100